| | |
|---|---|
| DISTRICT COURT, LARIMER COUNTY, COLORADO<br>201 La Porte Avenue, Suite 100, Ft. Collins, CO 80521<br>(970) 494-3500<br><br>**Plaintiff:**<br><br>BRINKMAN CONSTRUCTION, INC.<br><br>v.<br><br>**Defendant:**<br><br>CHRIS LLOYD, an individual. | DATE FILED: October 31, 2019 3:09 PM<br>FILING ID: A50440C777EAE<br>CASE NUMBER: 2019CV30973<br><br><br><br><br><br><br><br>▲ **COURT USE ONLY** ▲ |
| **Attorneys for Plaintiff Brinkman Construction, Inc.**<br><br>**Name:**    Buck S. Beltzer, #37804<br>**Address:**  Beltzer Bangert & Gunnell LLP<br>             7900 E. Union Ave., Ste. 920<br>             Denver, CO  80237<br>**Phone No.:** (720) 277-2113<br>**Email:**     buck@bbglaw.com | **Case No.:**<br><br>**Div.** |
| **BRINKMAN CONSTRUCTION, INC.'S COMPLAINT** | |

Plaintiff Brinkman Construction, Inc. ("Brinkman"), for its Complaint against Defendant Chris Lloyd ("Defendant"), pleads as follows:

## PARTIES

1.     Brinkman is a Colorado corporation with its principle place of business at 3528 Precision Drive, Suite 100, Ft. Collins, CO 80528, in Larimer County.

2.     Defendant is an individual, who, upon information and belief, resides at 6725 Prestonshire Lane, Dallas, TX 75225.

3.     Upon information and belief, Defendant owns or once owned a forty percent (40%) ownership interest in Naylor Concrete and Steel Erectors, LLC ("NCSE"), which is an

Arkansas limited liability company registered to do business in Colorado with a principal office

at 198 Bull Creek Road, Mount Vernon, Arkansas 75111.

## JURISDICTION AND VENUE

4.      Venue is proper in Larimer County pursuant to C.R.C.P. 98(c)(5) because the

tortious actions were committed in Larimer County. Defendant fraudulently misrepresented

and/or concealed NCSE finances by emailing fraudulent financial documents and making

fraudulent statements to Brinkman employees at its principal place of business in Larimer

County. Brinkman reviewed the financial information provided by Defendant in Larimer County,

acted upon Defendant's false representations in Larimer County, and suffered damages from

Defendant's misconduct in Larimer County.

5.      This Court has personal jurisdiction over Defendant in accordance with the due

process clause of the United States Constitution and pursuant to Colorado's long-arm statute,

Colo. Rev. Stat. § 13-1-124(1)(a) and (b), because Defendant's wrongful conduct arises from his

business transactions within the State of Colorado and because Defendant committed tortious

acts within the State of Colorado. By seeking to obtain construction work in Colorado by

inducing Brinkman to sign the Subcontract with NCSE, and because Defendant stood to gain

personally as a 40% owner of NCSE, Defendant has purposefully availed himself to the

jurisdiction of this Court, and the exercise of personal jurisdiction over Defendant does not

offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash.,*

*Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

6.      This Court has subject matter jurisdiction over this action because this is a civil

action for damages and/or equitable relief pursuant to Colo. Const. Art. VI, § 9(1).

**GENERAL ALLEGATIONS**

7.      Brinkman was hired as the general contractor to build the South Main Station, a large, mixed-use development in Longmont, Boulder County, Colorado (the "Project").

8.      Brinkman hired NCSE to provide concrete work for the Project, which generally included completing foundations, elevated decks, and on-grade slabs for four building pads. Brinkman and NCSE entered into a subcontract for this work on June 14, 2018 (the "Subcontract").

9.      Prior to execution of the Subcontract, Brinkman performed due diligence into the finances of NCSE to ensure it had adequate capital and revenue and credit to procure materials, rent or procure equipment, employ the necessary forces, support its jobsite operations with appropriate and necessary overhead, and most importantly, to rightfully and appropriately use monies paid to it by Brinkman to pay for these things, as well as to pay its subcontractors throughout the course of the Project.

10.     Brinkman's due diligence revealed concerns.  Based on the statements of assets, liabilities, and owner's equity – tax basis for Dec. 31, 2016 and Aug. 31, 2017 provided by Defendant, NCSE appeared to be under-capitalized and lack the financial wherewithal to perform as required by Brinkman. Importantly, NCSE was carrying an outstanding line of credit by which it owed a balance of approximately two million dollars ($2,000,000).  Such a large debt would tend to negatively impact NCSE's ability to finance its scope of work.

11.     The named creditor on the line of credit was Defendant Chris H. Lloyd.

12.     Brinkman, wary about the large debt being carried by NCSE, repeatedly asked NCSE to submit CPA audited financial statements for 2017 to the Project's prequalification platform which would allow Brinkman to compare NCSE's finances to other subcontractors

bidding the Project. Defendant submitted uncertified financial statements, the most current being through August 31, 2017. Brinkman explained to Defendant that the large subordinated debt carried by NCSE was lowering NCSE's prequalification score, which is used to compare subcontractors bidding on the Project. When Brinkman inquired about the debt which was negatively impacting NCSE's prequalification score, Defendant informed Brinkman that the debt is a line of credit extended by a team of investors, led by the Defendant. NCSE then put Brinkman in contact with Defendant to discuss the line of credit. Defendant understood that carrying the subordinated debt was negatively impacting NCSE's prequalification score and indicated that plans were underway to convert the debt to equity. Defendant conspired with NCSE employees to make it appear the debt was being transformed into equity, thereby improving NCSE's prequalification score and inducing Brinkman to award NCSE the Project.

13.     In response to Brinkman's concerns, NCSE converted the outstanding line of credit from debt to equity by selling a forty percent (40%) ownership interest in NCSE to Defendant in exchange for the two million-dollar ($2,000,000) note possessed by Defendant, as demonstrated by the Membership Interest Purchase Agreement (the "Agreement").  *See* **Exhibit A**, the Agreement.  In other words, Defendant sought to assuage the concerns of Brinkman by explaining that NCSE was on solid financial footing by virtue of the debt had been wiped out in exchange for Defendant's ownership position in the company. When Defendant assured Brinkman that NCSE would no longer be liable for $2 million in debt, Brinkman was persuaded to believe that NCSE was adequately stable enough to fund its scope of the Project.

14.     Defendant provided Brinkman a copy of the Agreement prior to execution of the Subcontract.

15.     Defendant provided Brinkman the Dec. 31, 2016 and Aug. 31, 2017 financial statements by email, in which he claimed, "Attached are the financials with [sic] that properly reflect the conversion of some of my debt to equity."  *See* **Exhibit B**, Defendant email to Brinkman with financial statements.

16.     Defendant provided Brinkman the Agreement to induce Brinkman to award NCSE the Subcontract.

17.     Defendant provided Brinkman the revised NCSE financial documents reflecting the effect of the Agreement to induce Brinkman to award NCSE the Subcontract.

18.     Brinkman justifiably relied upon the representations made by Defendant in both the Agreement and the revised NCSE financial documents when making its decision to award NCSE the Subcontract.  In addition to the internal discussions and deliberations regarding who Brinkman should award the subcontract to, in an internal email, Brinkman expressly states it is going to award the Subcontract to NCSE because "[t]hey have more than adequate working capital for this contract.".  *See* **Exhibit C**, internal Brinkman email.

19.     The Agreement was a manipulation of NCSE's finances to make NCSE appear to possess adequate working capital for the Project when in fact Defendant, NCSE, and NCSE's other owners knew NCSE could not finance its scope of work on the Project.

20.     Unfortunately, the concerns Brinkman raised, and which Defendant relieved through his fraud, came true. Brinkman paid NCSE yet NCSE failed to pay its subcontractors for work they performed on the project.  NCSE then left the project unfinished and fled town, leaving Brinkman to have to pay – again – NCSE's subcontractors for their work. Brinkman has paid the following NCSE subcontractors and suppliers for work performed or materials supplied; Aggregate Industries ($425,000), Rebar Specialties ($27,785), Sunstate Equipment ($61,040),

Ready Cable ($60,625), Barton Supply ($12,790), Azteca Rebar ($45,000), Southwest Concrete Pumping ($28,000), Tool and Anchor Supply ($78,767), and Doka Formwork ($285,913). The total amount unpaid by NCSE and paid by Brinkman to these subcontractors and suppliers is $1,024,920. Brinkman has also been forced to supplement and complete NCSE's remaining scope on the Project thereby incurring an additional $271,299 in damages. Finally, Brinkman incurred additional administrative costs due to NCSE's lack of financial resources in the amount of $13,581. Brinkman has suffered damages in the total amount of $1,309,800 exclusive of attorneys' fees, costs, and interest. *See* **Exhibit D**, calculation of damages. All damages suffered by Brinkman were proximately caused by the tortious acts or omissions of Defendant inducing Brinkman to award NCSE the Subcontract.

21.     After NCSE was terminated from the Project and Brinkman began to investigate, it determined NCSE never possessed the working capital Defendant represented in its financial disclosures to Brinkman.

22.     Brinkman would not have awarded the Subcontract to NCSE but for Defendant's statement about NCSE's financial condition.

23.     In a related action, on June 19, 2019 Brinkman filed its first amended complaint against NCSE, Ricky Naylor, NCSE's founder and co-owner, and Paul Brewer, NCSE's Chief Financial Officer and co-owner, in Boulder County as Case No. 2019CV30418.

24.     NCSE, Ricky Naylor and Paul Brewer failed to answer Brinkman's complaint.

25.     As a result, on August 13, 2019 the Clerk entered default against NCSE and Ricky Naylor.

26.     Ricky Naylor and Paul Brewer subsequently filed bankruptcy in Oklahoma and Arkansas, respectively.

**First Cause of Action**
**(Constructive Fraud)**

27.     Brinkman incorporates each of the allegations contained in Paragraphs 1-26 of this Complaint as if set forth in full here.

28.     A duty existed between Defendant and Brinkman due to their relationship arising from the Project, in which Brinkman was the general contractor and NCSE was the subcontractor.

29.     Defendant violated that duty by making deceptive material representations of past or existing facts relating to NCSE's finances.  *See* **Exhibits A** and **B**.

30.     Brinkman relied upon Defendant's deceptive material representations.  *See* **Exhibit C**.

31.     Brinkman has been injured because of its reliance on Defendant's wrongful actions, which are the proximate cause of Brinkman's injury. Brinkman has sustained actual damages, currently in the amount of $1,309,800. This amount excludes attorneys' fees, costs and interest.  *See* **Exhibit D**.

32.     The injury to Brinkman is the result of fraud, malice or willful and wanton misconduct within the meaning of Colo. Rev. Stat. § 13-21-102(1).

33.     Defendant gained the advantage of being awarded the Subcontract at the expense of Brinkman.

**Second Cause of Action**
**(Fraudulent Misrepresentation)**

34.     Brinkman incorporates each of the allegations contained in Paragraphs 1-33 of the Complaint as if set forth in full here.

35.     The Agreement Defendant provided Brinkman was a fraudulent misrepresentation of material fact intended to induce Brinkman to award NCSE the Subcontract.

36.     Brinkman relied upon the Agreement when making its decision to award NCSE the Subcontract.  *See* **Exhibit C**.

37.     The financial documents Defendant provided Brinkman fraudulently misrepresented NCSE's finances to induce Brinkman to award NCSE the Subcontract.

38.     Brinkman relied upon the financial documents when making its decision to award NCSE the Subcontract.  *See* **Exhibit C**.

39.     Brinkman was justified in relying upon the financial representations made by Defendant as is custom in the construction bidding process.

40.     Brinkman's reliance on Defendant's fraudulent misrepresentation of NCSE's finances has caused Brinkman to suffer actual damages amounting to $1,309,800. This amount excludes attorneys' fees, costs, and interest.  *See* **Exhibit D**.

41.     The injury to Brinkman is the result of fraud, malice or willful and wanton misconduct within the meaning of Colo. Rev. Stat. § 13-21-102(1).

### Third Cause of Action
**(Fraudulent Concealment)**

42.     Brinkman incorporates each of the allegations contained in Paragraphs 1-41 of the Complaint as if set forth in full here.

43.     Defendant concealed NCSE's true financial condition from Brinkman during the Project's bidding process.

44.     NCSE's true and accurate financial condition should have been disclosed to Brinkman in equity and good conscience.

45.     Defendant knowingly concealed NCSE's true financial condition from Brinkman.

46.     Brinkman had no knowledge of NCSE's financial condition other than the misrepresentations provided by Defendant and NCSE.

47.     Defendant intended for Brinkman to award the Subcontract to NCSE based upon Defendant's concealment of NCSE's true financial condition.

48.     Brinkman acted on Defendant's concealment as demonstrated by awarding the Subcontract to NCSE, which resulted in Brinkman suffering damages amounting to $1,309,800. This amount excludes attorneys' fees, costs, and interest.  *See* **Exhibits C** and **D**.

49.     The injury to Brinkman is the result of fraud, malice or willful and wanton misconduct within the meaning of Colo. Rev. Stat. § 13-21-102(1).

### Fourth Cause of Action
### (Civil Conspiracy)

50.     Brinkman incorporates each of the allegations contained in Paragraphs 1-49 of the Complaint as if set forth in full here.

51.     Defendant, Ricky Naylor and/or NCSE conspired together to mispresent or conceal NCSE's true financial condition from Brinkman during the Project's bidding process. *See* **Exhibit A**.

52.     There was a meeting of the minds of Defendant, Ricky Naylor and/or NCSE to misrepresent of conceal NCSE's true financial condition as demonstrated by the executed Agreement and financial documents provided by Defendant to Brinkman.  *See* **Exhibit A**.

53.     Defendant committed one or more unlawful overt acts by providing Brinkman the Agreement and other financial documents which fraudulently misrepresented NCSE's true financial condition and/or fraudulently concealed NCSE's true financial condition from Brinkman.  *See* **Exhibits A** and **B**.

54.     Brinkman has suffered damages amounting to approximately $1,309,800. This amount excludes attorneys' fees, costs, and interest. All Brinkman damages are the proximate result of Defendant's wrongful actions.  *See* **Exhibit D**.

55.     Defendant is jointly and severally liable for the acts or omissions of his co-conspirators pursuant to Colo. Rev. Stat. § 13-21-111.5(4); *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995).

56.     The injury to Brinkman is the result of fraud, malice or willful and wanton misconduct within the meaning of Colo. Rev. Stat. § 13-21-102(1).

## Jury Demand

Plaintiff requests that all issues so triable herein be decided by jury.

**WHEREFORE**, Plaintiff seeks:

a)   Judgment in favor of Brinkman and against Defendant for constructive fraud;

b)   Judgment in favor of Brinkman and against Defendant for fraudulent misrepresentation;

c)   Judgment in favor of Brinkman and against Defendant for fraudulent concealment;

d)   Judgement in favor of Brinkman and against Defendant for civil conspiracy;

e)   An award of damages in favor of Brinkman and against Defendant in an amount at least $1,309,800 with the precise amount to be proven at trial;

f)   Exemplary damages as allowed by statute;

g)   An award of pre-judgment and post-judgment interest at 8% as allowed by statute;

h)   An award of reasonable attorney fees and costs; and

i)   Any other and further relief the Court deems appropriate;

Dated: October 31, 2019.

*s/* Buck Beltzer

Buck S. Beltzer, Esq., #37804
Beltzer Bangert & Gunnell LLP
7900 E. Union Ave., Ste. 920
Denver, Colorado 80237
buck@bbglaw.com

**Attorneys for Plaintiff Brinkman
Construction, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2019, a true and correct copy of the foregoing was filed with the Court and served via the Colorado E-Filing system, on the following:

**All Attorneys of Record**

*s/Aleamia M. Roberts*