IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03438-RMR-KLM

BRINKMAN CONSTRUCTION, INC.,

     Plaintiff,

v.

CHRIS LLOYD,

     Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Complaint** [#71][1] (the "Motion"). Plaintiff filed a Response [#74] in opposition to the Motion [#71], and Defendant filed a Reply [#75]. The Motion [#71] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1. *See* [#72]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#71] be **DENIED**.

---

[1] "[#71]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

## I.  Background[2]

Plaintiff is a Colorado corporation with its principal place of business located in Colorado.  *Second Am. Compl.* [#69] ¶ 1.  It is a general contracting business which completes commercial construction projects throughout Colorado.  *Id.* ¶ 9.  Defendant is an individual who resides in Texas.  *Id.* ¶ 2.  He is an investor who came to own a forty-percent (40%) ownership interest in an Arkansas company—Naylor Concrete and Steel Erectors, LLC ("NCSE").  *Id.* ¶ 3.

Plaintiff was hired to build the South Main Station (the "Project") in Longmont, Colorado, and began conducting due diligence into the finances of potential subcontractors including NCSE.  *Id.* ¶¶ 10, 20.  The potential subcontractors were each provided a prequalification score for purposes of comparison.  *Id.* ¶ 11.  NCSE initially had a low prequalification score, because it owed an outstanding debt of $2,000,000 to Defendant.  *Id.* ¶¶ 18-19.  Because of NCSE's low prequalification score, Plaintiff contacted NCSE to perform further due diligence and was placed in contact with Defendant.  *Id.* ¶¶ 20-21.  In an effort to raise its prequalification score, NCSE negotiated a Membership Interest Purchase Agreement (the "Agreement") with Defendant to convert Defendant's debt into equity so that the company's finances would appear stronger and its prequalification score would improve.  *Id.* ¶¶ 49-50.  Thus, Defendant became a forty-percent owner of NCSE, and NCSE no longer owed Defendant the $2,000,000.  *Id.*  Defendant informed Plaintiff of this update and provided Plaintiff a copy of the Agreement, along with NCSE's updated financials reflecting this change.  *Id.*  On June 14, 2018, after

---

[2]  For the purposes of resolving the Motion [#71], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Second Amended Complaint [#69].  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

receiving these communications from Defendant, Plaintiff entered into a subcontracting agreement with NCSE to provide concrete work for the Project.  *Id.* ¶¶ 55-56.  Throughout the course of communications between Plaintiff and Defendant, Defendant received and read multiple emails from Plaintiff wherein the signature block stated that Plaintiff maintained an address in Colorado.  *Id.* ¶¶ 44-46.  Defendant also had access to Plaintiff's website that listed Plaintiff's addresses exclusively in Colorado.[3]  *Response* [#74] at 2, 4-6, 8.

However, "NCSE failed to pay its sub-contractors and suppliers as required by the Subcontract."  *Second Am. Compl.* [#69] ¶ 64.  As a result, Plaintiff alleges it suffered damages in the total amount of $1,309,800.  *Id.* ¶ 72.  On June 19, 2019, in a related action, Plaintiff filed its first complaint, Case No. 2019CV30418, against NCSE and its co-owners, Ricky Naylor ("Naylor") and Paul Brewer ("Brewer") in Boulder County.  *Id.* ¶ 65. NCSE failed to respond to this complaint.  *Id.* ¶ 66.  Mr. Naylor then filed for bankruptcy in Oklahoma, and Mr. Brewer filed for bankruptcy in Arkansas, leaving Plaintiff unable to recover damages from them.[4]  *Id.* ¶ 65.

In the Second Amended Complaint [#69], Plaintiff asserts four claims against Defendant: (1) constructive fraud; (2) fraudulent misrepresentation; (3) fraudulent concealment; and (4) civil conspiracy.  *Id.* ¶¶ 80-116.  Plaintiff seeks judgment against Defendant in the amount of $1,309,800 plus interest, exemplary damages, and attorney

---

[3]  Defendant read and responded to at least one email containing an embedded link to Plaintiff's website.  *See Pl.'s Ex. 3*, *Emails Between Pl. & Def.* [#66-4] (the "Emails").

[4]  The Second Amended Complaint [#69] does not state whether NCSE, the corporate defendant, also filed for bankruptcy.

fees. *See id.* at 18.  In the present Motion [#71], Defendant seeks dismissal of all claims under Fed. R. Civ. P. 12(b)(2).  *Motion* [#71] at 1.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is to determine whether the Court has personal jurisdiction over the named parties.  "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of personal jurisdiction."  *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).  After the defendant files a motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant.  *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984).  The Court accepts the well-pled allegations of the operative pleadings as true to determine whether the plaintiff has made a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). Conflicting facts "must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotation marks and citations omitted).

## III.  Analysis

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 291 (1980)).  "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  Colorado's long-arm statute extends jurisdiction to the full extent of the Constitution.  *Goodwin v. Bruggeman Hatch*, No. 16-cv-00751-CMA-KLM, 2018 WL 2196057, at *3 (D. Colo. May 14, 2018).  In the Motion [#71], Defendant does not contest the service of process aspect of this analysis, but only "whether the exercise of jurisdiction comports with due process."  *Trujillo*, 465 F.3d at 1217.

Under the due process clause, the party must have sufficient "minimum contacts" with the state, so that the exercise of jurisdiction over him would not violate "traditional notions of fair play and substantial justice."  *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The "minimum contacts" test may be established by general jurisdiction or specific jurisdiction.  *Otter Prod., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019).

Because Plaintiff is only arguing that specific personal jurisdiction exists, the Court does not address the issue of general personal jurisdiction.  *See Response* [#74] at 5.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"  *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  In order to establish specific jurisdiction, Plaintiff must satisfy

two requirements.  *PopSockets LLC v. Online King LLC*, No. 19-cv-01277-CMA-NYW, 2019 WL 7168661, at *3 (D. Colo. Dec. 23, 2019).  Plaintiff must adequately allege or otherwise establish that (1) Defendant purposefully directed his activities toward the forum state, and (2) the litigation is a result of injuries that "arise out of or relate to" Defendant's contacts with the forum state.  *Burger King*, 471 U.S. at 472; *Dudnikov*, 514 F.3d at 1017 (stating that, "[i]n the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state"); *see Second Am. Compl.* [#69] ¶¶ 80-116 (alleging four claims all stemming from tort law: constructive fraud, fraudulent misrepresentation, fraudulent concealment, and civil conspiracy).

Plaintiff argues that the Court has personal jurisdiction over Defendant because Defendant purposefully sent fraudulent disclosures to an office and employees that Defendant knew to be in Colorado, inducing Plaintiff to award subcontracting work to NCSE, which directly resulted in harm felt in Colorado.  *Second Am. Compl.* [#69] ¶¶ 5-6.  In the Motion [#71], Defendant mentions in passing the "traditional notions of fair play and substantial justice" aspect of the personal jurisdiction test but offers no argument that Plaintiff has not adequately met this requirement.  Rather, Defendant only argues that his "contacts with the forum . . . do not support a finding that he purposefully directed activities at Colorado or that [p]laintiff's alleged injuries arise out of his alleged forum-related activities."  *See Motion* [#71] at 4.

## A.    Purposeful Availment

To establish minimum contacts with a forum state, the plaintiff must first show the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State . . . ."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Physical presence in

the forum state is not required because "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines." *Burger King*, 471 U.S. at 476. Instead, purposeful availment can include any of the defendant's actions which "create a substantial connection with the forum state." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987). To determine whether there is purposeful availment for purposes of personal jurisdiction, courts must examine both the quantity and quality of the defendant's contacts with the forum state. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1092 (10th Cir. 1998); *see also Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) (stating that "the mere quantum of contacts between the forum and the defendant is not determinative of this issue"). Courts will find that personal jurisdiction is lacking if: (1) "the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant[,]" *World-Wide Volkswagen*, 444 U.S. at 295, or (2) the contacts with the forum state are "random, fortuitous, or attenuated[,]" *Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618, 625 (10th Cir. 1988).

Moreover, in cases of alleged tortious injury, as is the case here, the "effects test" is used to determine if personal jurisdiction is applicable. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). Purposeful availment is established if the defendant: (1) commits "an intentional action"; (2) "expressly aimed at the forum state"; (3) with "knowledge that the brunt of the injury would be felt in the forum state." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 (10th Cir. 2012) (quoting *Dudnikov*, 514 F.3d at 1072). The first prong of the effects test is relatively easy to show, but the plaintiff must also show that the focus

of the defendant's actions was aimed at the forum state and that the consequences of the defendant's actions were felt in the forum state. *Id*. A defendant is considered to have sufficient minimum contacts with the forum state even when the tortious conduct occurred out-of-state, but the effects were nevertheless felt in the forum state. *McAvoy v. Dist. Court in & for City & Cty. of Denver*, 757 P.2d 633, 635 (Colo. 1988); *see also Wenz*, 55 F.3d at 1507 (explaining personal jurisdiction "may be satisfied when (1) tortious conduct occurs in Colorado, or (2) when tortious conduct initiated in another state causes injury in Colorado"). If the tortious conduct neither occurred in Colorado, nor was felt in Colorado, then personal jurisdiction is lacking. *McAvoy*, 757 P.2d at 635. In any case, the plaintiff's allegations need factual support, i.e., they must be more than mere conclusory allegations. *Id*. Therefore, "to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws." *Far W. Cap. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

Taking as true the allegations in the Second Amended Complaint [#69], the Court finds that, under the effects test, Plaintiff sufficiently pleads that Defendant purposefully availed himself of the benefits of the forum state's laws.

### 1.    Intentional Acts

Defendant himself concedes that "the Second Amended Complaint adequately pleads intentional acts, satisfying the first element of the [effects] test." *Motion* [#71] at 9.

### 2.    Expressly Aimed

The Court finds that Plaintiff also sufficiently pleads the second element of the effects test, i.e., that the intentional acts were "expressly aimed at the forum state." *See*

*Grynberg*, 490 F. App'x at 96.   Defendant's conduct was aimed at Colorado because Defendant was attempting to secure business in Colorado for NCSE, and in doing so he was communicating directly with persons located in Colorado. *See Second Am. Compl.* [#69] ¶¶ 6-7, 20-55.   Defendant never set foot in Colorado during these communications, but he is not required to do so for purposes of personal jurisdiction so long as the effects of his actions were felt in Colorado.   *Motion* [#71] at 11; *Burger King*, 471 U.S. at 476.

Defendant argues that his actions were not expressly aimed at Colorado because Defendant responded to, rather than initiated, communication with Plaintiff.   *Motion* [#71] at 9-12.   But Defendant's actions were not merely responsive communications with Plaintiff.   Defendant chose to revise NCSE's financial documents to show a change from debt to equity, *Second Am. Compl.* [#69] ¶ 32, and Defendant chose to send Plaintiff those documents without being prompted to do so, *id*. ¶¶ 31-32.   As Plaintiff points out: "No one forced [Defendant] to convert his debt to equity; [Defendant] alone chose to do so, and [Defendant] alone sent [Plaintiff] the revised financial statements . . . to secure work for NCSE in Colorado."   *Response* [#74] at 11-12; *see also Red Oaks W., Inc. v. Specialty Trucks & Equip., Inc.*, No. 15-cv-00128, 2015 WL 4476659, at *4-5 (D. Utah July 22, 2015) (finding that specific assurances given by a defendant in response to communications initiated by a plaintiff "were expressly aimed at the forum state.") Therefore, the Court finds that the Second Amended Complaint [#69] satisfies the second element of the effects test.

### 3.    Knowledge That . . . the Injury Would Be Felt in the Forum State

To meet the effects test, Plaintiff must also sufficiently plead that Defendant acted with "knowledge that the brunt of the injury would be felt in the forum state."   *Grynberg*,

490 F. App'x at 96.  In *Calder v. Jones*, the United States Supreme Court "stressed the fact that the [newspaper] defendants 'knew that the brunt of th[e] injury would be felt' in the forum state."  *Dudnikov*, 514 F.3d at 1072.  In *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, the Tenth Circuit Court of Appeals, relying on *Calder*, held that the "plaintiffs have satisfied their burden of establishing, at this stage, that defendants knew plaintiffs' business and auction were based in Colorado, and therefore knew the effects of [their actions] would be felt there."  *Id.*; *see also Tripwireless Inc. v. Borrego*, No. 19-cv-01819-KLM, 2019 WL 12248967, at *5 (D. Colo. Nov. 4, 2019) ("Accepting as true the allegations that [d]efendant reached out to [p]laintiff in Colorado to seek employment and intentionally violated the Employment Agreement while knowing that [p]laintiff is a Colorado corporation, it can be inferred that [d]efendant knew that the 'brunt of the injury' would be felt in Colorado.")

Plaintiff argues that the "Second Amended Complaint has cured the defect which the Court previously found fatal."  *Response* [#74] at 6.  The Court agrees.  The Second Amended Complaint [#69] cures the speculative and conclusory statements of the Amended Complaint [#43].  In the Second Amended Complaint [#69], Plaintiff now pleads that Defendant was made aware of Plaintiff's location in Colorado through Plaintiff's email signature block that clearly "states [Plaintiff]'s address is in Fort Collins, Colorado." *Second Am. Compl.* [#69] ¶¶ 44-46.  These pleadings are strongly supported by an email chain definitively showing that Defendant read and responded to an email from Plaintiff listing the Colorado address.  *Id.*; *Emails* [#66-4]; *see also Impact Prods.*, 341 F. Supp. 2d at 1189 (stating that the Court "may also consider affidavits and other written materials submitted by the parties").

Defendant argues that Plaintiff's website, which was accessible to Defendant and listed Plaintiff's addresses in Colorado, is not before the Court because it was first raised in the Response to the Motion [#74].  *Response* [#74] at 8; *Reply* [#75] at 3 n.2.  However, the Court need not consider Plaintiff's website.   It also need not consider whether Defendant knew "the construction project was in Colorado . . . or [whether] [Defendant] accessed Plaintiff's website."  *Reply* [#75] at 3.  Defendant's access to Plaintiff's Colorado location was sufficiently analogous to *Dudnikov v. Chalk & Vermilion Fine Arts*, in which the Tenth Circuit Court of Appeals found the third element of the effects test was satisfied because of the defendants' access to the plaintiffs' location through a webpage. *Dudnikov*, 514 F.3d at 1077-1078 ("[P]laintiffs have satisfied their burden of establishing, at this stage, that defendants knew plaintiffs' business and auction were based in Colorado, and therefore knew the effects . . . would be felt there.")  Here, instead of through a webpage, Defendant undisputedly had access to Plaintiff's location in Colorado through email.  *See Emails* [#66-4].  Therefore, Defendant knew that the brunt of any injury suffered by Plaintiff arising from Defendant's actions would ultimately be felt in Colorado, satisfying the third element of the effects test.

The Court recognizes that this outcome differs from its prior Recommendation [#59] on the same topic.  There, the Court found that Plaintiff had not met its burden of showing that the Court could exercise personal jurisdiction over Defendant because the Amended Complaint [#43] contained only speculative allegations regarding Defendant's knowledge of Plaintiff's connection to Colorado.  *Recommendation* [#59] at 9.  The District Judge ultimately agreed with this analysis but permitted Plaintiff to amend its Amended Complaint [#43] to attempt to rectify this issue.  *Minutes* [#65]; *Order* [#67]; *Transcript*

[#70].  The difference between the present Second Amended Complaint [#69] and the prior Amended Complaint [#43] is that now, for the first time, Plaintiff adequately makes factual allegations that Defendant knew he was dealing with a business located in Colorado.

Accordingly, the Court finds that Plaintiff sufficiently pleads that Defendant purposefully availed himself of the privilege of conducting business in Colorado.

**B.     Relating to or Arising Out of**

Even if Plaintiff demonstrates that the purposeful availment test is met, a defendant is only considered to have sufficient minimum contacts with the forum when the plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state.  *Burger King*, 471 U.S. at 472.  Therefore, the Court "must [also] determine whether a nexus exists between [d]efendant's forum-related contacts and the [p]laintiff's cause of action."  *OMI Holdings*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 109).  If the defendant could have "reasonably anticipated being haled into court" in the forum state, then an assertion of personal jurisdiction is proper. *World-Wide Volkswagen*, 444 U.S. at 297.  Here, taking as true the allegations in the Second Amended Complaint [#69], the Court finds that Plaintiff's claims directly relate to and arise out of Defendant's contacts with Colorado. Defendant's only contact with Colorado was inducing the subcontracting agreement with NCSE.  *See Motion* [#71] at 8.  But, because the terms of this agreement were not adhered to, Plaintiff was allegedly injured and now Plaintiff is seeking redress.  *Second Am. Compl.* [#69] ¶¶ 68-72.  Thus, Plaintiff's claims arise out of Defendant's forum-related contacts because, if Defendant had remained a passive investor in NCSE, the contractual agreement between Plaintiff and NCSE to conduct business in Colorado likely would not

have existed and this lawsuit would not have been brought.  *See id.* ¶ 21 ("[Defendant] . . . indicated to [Plaintiff] that he would speak on NCSE's behalf . . . .  At all times during his communications with representatives [of] [Plaintiff], [Defendant] represented that he was knowledgeable of and had some control over NCSE's finances . . . .")  In other words, communications between Defendant and Plaintiff led to the contract, which in turn resulted in its breach and Plaintiff's alleged injury.  *See id.* ¶¶ 55-56.  Defendant argues that Plaintiff's injuries only arose under NCSE's third party breach "rather than resulting from [Defendant]'s limited responsive interactions with Plaintiff."  *Motion* [#71] at 14-15.  However, Defendant did not simply engage in limited responsive interactions during Plaintiff's negotiations with NCSE.  In fact, when negotiations started, Defendant owned no equity stake in NCSE, but in an effort to secure the subcontracting bid from Plaintiff, Defendant was willing to swap his debt interest for an equity interest.  *See Second Am. Compl.* [#69] ¶¶ 49-50.  It was this action which led to the contact between Defendant and Plaintiff, and ergo the contract between NCSE and Plaintiff to do business in Colorado.  *Id.* ¶¶ 55-56.

Accordingly, the Court finds that Plaintiff sufficiently shows that its injuries arose from Defendant's contacts with the state of Colorado.

Because Defendant purposefully availed himself of the benefit of doing business in Colorado, and because Plaintiff's claims arise out of Defendant's purposeful availment, Defendant is considered to have sufficient minimum contacts with the forum state. Therefore, the Court has specific jurisdiction and thus, Plaintiff has met its burden of establishing personal jurisdiction over Defendant.  *See Behagen*, 744 F.2d at 733.

## IV.  Conclusion

Based on the foregoing reasons,

The Court respectfully **RECOMMENDS** that the Motion [#71] be **DENIED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 6, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge